NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LATCHMIE TOOLASPRASHAD, | : | Civil No. 09-5335 (RBK) |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM OPINION** |
| BUREAU OF PRISONS, et al., | : | |
| Defendants. | : | |

It appearing that:

1. Presently before this Court are six motions filed by Plaintiff, i.e., motion [docket entry #48] to vacate Order entered September 29, 2009, motion [docket entry #49] to change case caption, motion [docket entry #50] requesting discovery scheduling order, motion [docket entry #51] for production of documents, motion [docket entry #54] to consolidate with Toolasprashad v. Williams, Civil No. 07-5860 (RBK) (D.N.J. filed Dec. 10, 2007), and motion [docket entry #55] for Court to apply Brodheim v. Cry, 584 F. 3d 1262 (9th Cir. 2009). In addition, the Prison Litigation Reform Act requires this Court to sua sponte screen the claims transferred to this Court for failure to state a claim upon which relief may be granted. See 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

2. On February 19, 2009, the Clerk of the United States District Court for the District of Columbia received from Plaintiff, a prisoner incarcerated at FCI Fort Dix in New Jersey, a Complaint [docket entry #1] and application to proceed in forma pauperis. In the Complaint, Plaintiff contends that defendants violated the Privacy Act, 5 U.S.C. § 552a(g)(5), by maintaining

a false and inaccurate Special Investigative Services ("SIS") Report dated April 14, 2003, regarding incidents that occurred at FCI Fort Dix between April 2 and 26, 2002. In addition, Plaintiff maintains that defendants removed him from his food services job on May 2, 2008, upon the direction of then-warden Grondolsky, in retaliation for Plaintiff's filing numerous grievances regarding the events in April 2002, the false SIS Report, and other matters relating to alleged corruption at FCI Fort Dix, as well as Plaintiff's sending letters of complaint to the United States Department of Justice, Senator Charles Schumer and other public officials. Plaintiff seeks injunctive relief and damages.

    3. By Order [docket entry #5] entered February 20, 2009, United States District Judge Ellen S. Huvelle granted Plaintiff's application to proceed in forma pauperis.[1]

    4. On May 20, 2009, defendants filed a motion [docket entry #21] to dismiss the Complaint or for summary judgment. Defendants argued that the First Amendment retaliation claim should be dismissed because the job transfer did not rise to the level of an adverse action, which is a necessary element in stating a retaliation claim; because Plaintiff's allegations failed to assert facts showing a causal nexus between his filing of grievances and the job reassignment; because Plaintiff's filing of grievances was not deterred by the alleged adverse action; because

---

[1] This Court notes that Plaintiff is barred from proceeding without prepayment of the filing fee, pursuant to 28 U.S.C. § 1915(g), see, e.g., Toolasprashad v. Cowan, C.A. No. 02-2885 judgment dismissing appeal as frivolous (3d Cir. June 2, 2003); Toolasprashad v. Bureau of Prisons, Civil No. 04-3219 (JBS) order dismissing complaint for failure to state claim (D. N.J. April 4, 2005); Toolasprashad v. Cowan, Civil No. 01-0675 (MM) order dismissing complaint for failure to state claim (M.D. Pa. May 9, 2002); Toolasprashad v. Lane, Civil No. 97-0691 (MM) order dismissing complaint for failure to state claim (M.D. Pa. July 7, 1997), and the facts asserted in the instant Complaint do not show that Plaintiff is in imminent danger of serious physical injury. See 28 U.S.C. § 1915(g); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir. 2001).

the job reassignment was in furtherance of legitimate penological interests in security and the orderly running of the institution; and because defendants are protected by qualified immunity. Defendants argued that the Privacy Act Claim should be dismissed as barred by the two-year statute of limitations; the Court should reject Plaintiff's claim that the limitations period should be equitably tolled by Plaintiff's attempts to correct the SIS Report through the filing of grievances and submission of letters of complaint to other government agencies and officials; the Privacy Act claim should be dismissed because Plaintiff failed to timely exhaust administrative remedies; the Privacy Act claim should be dismissed because the SIS Report is part of a system of records which is exempt from the Privacy Act, see 5 U.S.C. § 552a(g) and (j); 28 C.F.R. § 16.97(h)(7) and (h)(9); and the claim should be dismissed on the merits.

    5. Plaintiff filed opposition papers on August 20, 2009, consisting of 112-page memorandum and 237 pages of exhibits [docket entry #32], on August 26, 2009, consisting of a 17-page memorandum and 65 pages of exhibits [docket entry #35], on September 2, 2009, consisting of a 10-page memorandum [docket entry #36], and on September 24, 2009, consisting of a 17-page memorandum and 63 pages of exhibits [docket entry #42].

    6. By Order and Opinion filed September 29, 2009 [docket entry nos. 44, 45], Judge Huvelle dismissed the Privacy Act Claim as time barred and transferred the First Amendment retaliation claim to this Court. Judge Huvelle reasoned that Plaintiff knew of the alleged Privacy Act violation at least by March 16, 2006, when prison officials rejected as untimely his administrative remedy request regarding inaccuracies in the SIS Report; because Plaintiff did not file the Complaint until February 4, 2009, which is more than two years later, Judge Huvelle reasoned that the claim was time barred and Plaintiff was not entitled to tolling.

A.  Plaintiff's Motion to Vacate the September 29, 2009, Order

      7.  On October 22, 2009, Plaintiff submitted to the Clerk of the United States District Court for the District of Columbia Circuit a motion to vacate the order of September 29, 2009. On November 2, 2009, the Clerk of this Court filed the motion [docket entry #48].

      8.  Plaintiff argues that Judge Huvelle erred in denying equitable tolling of the two-year statute of limitations on the Privacy Act Claim.  Specifically, he contends:

> [P]laintiff has clearly pointed out that he had and was in contact with public officials during this critical period in an effort to have the fabricated and falsified SIS report challenged.  That is, plaintiff had contacted the DOJ Civil Rights Division, OIG, BOP internal affairs, then-warden Defendant Samuels, BOP director Defendant Lappin, BOP Chief of Internal Affairs Defendant Dignam, BOP General and Associate General Counsels Defendants Kenney and Zoldak, Defendant Martin, and U.S. Senator Charles Schumer. (See, Compl. ¶¶ 32-36, 38-30 and Comp. Exhibit 4, Doc, #1) . . . .
>
> Moreover, in plaintiff's opposition at pp. 31-36 and Exhibits 18-33, 41-43, 45-46, Doc. #32, plaintiff has clearly established a time line with detail explanation and the exhibits show that the limitations should be tolled . . .

[Docket entry #48 at pp. 1-2.]

      9.  Plaintiff further maintains that "the surviving retaliatory claims should be allowed to proceed in the District of Columbia." [Docket entry #48 at p. 2.]

      10.  This Court construes the aforesaid motion as a motion for reconsideration, pursuant to Local Rule 7.1(i), of the Order dismissing the Privacy Act claim and transferring the First Amendment claims to this Court.  Relief under Local Civil Rule 7.1(i) may be granted:  (a) to correct manifest errors of law or fact upon which the judgment was based; (b) to present newly-discovered or previously unavailable evidence; (c) to prevent manifest injustice; and (d) an intervening change in prevailing law.  See North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.

3d 1194, 1218 (3d Cir. 1995); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985), cert. denied, 476 U.S. 1171 (1986).

      11.  This Court will deny the motion for reconsideration of the Order dismissing the Privacy Act Claim.  Plaintiff's moving papers acknowledge that he presented the same equitable tolling arguments he raises in this motion to Judge Huvelle in the series of opposition memoranda Plaintiff filed in the District Court for the District of Columbia.  Plaintiff has not shown manifest error of fact or law, previously unavailable evidence, or an intervening change in law.  Because mere disagreement with the district court's decision is an inappropriate basis for granting a motion for reconsideration, see Assisted Living Associates of Moorestown, L.L.C., v. Moorestown Tp, 996 F. Supp. 409, 442 (D.N.J. 1998) (citing Bermingham v. Sony Corp. of America, Inc., 820 F. Supp. 834, 859 n.8 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994)), this Court will deny the motion to reconsider dismissal of the Privacy Act claim.

      12.  This Court will also deny Plaintiff's motion to reconsider the Order transferring the First Amendment retaliation claim to this Court.  Plaintiff has provided no basis for this motion.

B.  Screening of the First Amendment Retaliation Claims for Sua Sponte Dismissal

      13.  The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires the Court to review a complaint in a civil action in which a prisoner seeks redress against a governmental employee or entity or is proceeding in forma pauperis.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a).  The PLRA requires the Court to sua sponte dismiss at any time a claim if the Court determines that it is frivolous,

malicious, fails to state a claim on which relief may be granted, [2] or seeks monetary relief from a defendant who is immune from such relief.  Id.

14.  The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, the Third Circuit instructs that a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility.  See Grayson v. Mayview State Hosp., 293 F. 3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F. 3d 113, 117 (3d Cir. 2000).  With these precepts in mind, the Court will determine whether the First Amendment retaliation claim should be dismissed.

15.  In the Complaint filed in this action on February 9, 2009, Plaintiff asserts the following facts regarding the First Amendment retaliation claim.  Plaintiff asserts:

> Because plaintiff has been filing grievances and contacting public officials concerning the corruption and fabricated SIS report, the guards and Nazi despicable warden (Grondolsky) himself "personally" has been retaliating against Plaintiff by censoring specific written First Amendment language such as "racist, moronic, porcine, Nazi" and others.  Thus, effective on May 2, 2008, Grondolsky personally retaliated against plaintiff by removing him from his food service job because of filing grievances and contacting public officials to expose the non-food service related corruption.
>
>    *      *      *
>
> Because of the complaints initiated by plaintiff and contacting public officials and using the so-called remedy process, Grondolsky "personally" retaliated against plaintiff further by removing him from his food service job, which was the job after being retaliatory fired from the commissary [in 2002].

---

[2] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

     *       *       *

> [P]laintiff was retaliatory fired from his job on May 2, 2008. But "prior" to and "after" being fired from the food service plaintiff was contacting the OIG, OIA, using the so-called remedy process and contacted Senator Schumer, as well as the named defendants; however, because of the systemic corruption plaintiff was further retaliated against and thus plaintiff notified the defendants of same.

     *       *       *

> Because plaintiff has been pursuing this matter he has been blocked from getting a job in the commissary, food service, institution laundry, recreation department, education, as clearly told to plaintiff by guards - noting that because he was fired from his jobs and filing complaints and writing to public officials - he cannot get a job in such departments - adverse actions in its best forms and all job plaintiff is qualified for. Plaintiff was specifically told by guards that because he has filed against the guards he will not get a decent job assignment and now in a job of $6 to $12/month, first lowered from about $300/month from his commissary job, then from about $100/month from food service and now the current $6 to $12/month.

(Compl. ¶¶ 5, 36, 45, 50) [Docket entry #1 at pp. 3, 14, 17, 19.]

  16. This Court takes judicial notice of the allegations set forth in another complaint Plaintiff filed in this Court on July 16, 2008, in the action entitled <u>Toolasprashad v. Williams</u>, Civil No. 07-5860 (RBK) am. complaint (D.N.J. filed July 16, 2008). Plaintiff's allegations included the following:

> On May 1, 2008, plaintiff became aware of a clandestine scheme to retaliatory remove him from his job in the food service department where he worked for six hears, retaliation perpetrated by defendants Grondolsky, McFarland, Hudgins, Heffron, Whritenour and others in promoting the muzzling of plaintiff's first amendment rights to petition the government for redress.
>
> Because of plaintiff's first amendment activities . . . , after plaintiff provided a host of factual evidence in his grievances and communicated with the Office of the Inspector General (OIG),

7

> public officials, Bureau of Prisons (BOP) Office of Internal Affairs (OIA), to expose the corruption by the defendants, plaintiff was retaliatory removed from his job effective May 2, 2008.
>
> Despite plaintiff's physical restrictions, as continued punitive punishment he was placed in the Gardening/Landscaping work detail despite the fact that plaintiff suffers from a chronic sinus problem and documented in the medical records of no outside work due to seasonal high pollen count.
>
>      *     *     *
>
> On May 2, 2008, plaintiff reported to the Gardening/Landscaping job and within an hour of being around the grass being cut, his nose began bleeding; however, plaintiff was able to get his job changed to a janitor in the housing unit, a reduction in pay from $0.40/he in the food service department to $0.12/hour as further punitive and retaliatory measures.
>
> Although plaintiff's work performance and conduct was nothing but commendable, defendants specifically removed him in retaliation from the food service because of his first amendment activities as outlined in this complaint, as for years plaintiff has been writing about the corruption and retaliation through the remedy process, as well as to public officials and, defendants as a form of retaliation, removed him from his job as a way of "getting even."

Toolasprashad v. Williams, Civil No. 07-5860 (RBK) am. complaint at pp. 21-22 (D.N.J. filed July 16, 2008). Plaintiff further complained that defendants refused to accept administrative remedy requests containing offensive language. Id.

  17. In an Opinion and Order filed April 28, 2009, this Court dismissed the aforesaid First Amendment retaliation claims on the merits because the alleged retaliatory actions were not sufficiently adverse to satisfy the "adverse action" requirement:

> "A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of

8

>   his constitutional rights and th adverse action taken against him." <u>Mitchell v. Horn</u>, 318 F. 3d 523, 530 (3d Cir. 2003 (internal quotation marks and citation omitted) . . . .  However, "once a prisoner has demonstrated that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may still prevail by proving that they would h ave made the same decision absent the protected conduct for reasons reasonably related to legitimate penological interest. <u>Rauser</u>, 241 F. 3d at 334; <u>see also</u> <u>Carter v. McGrady</u>, 292 F. 3d 152, 154 (3d Cir. 2002) (retaliation claim fails where prison officials would have disciplined inmate for policy violations notwithstanding  his protected activity).
>
>       *       *       *
>
>   To the extent that Plaintiff asserts that the constitutionally protected conduct is the pursuit of the administrative remedy process in his own behalf, the retaliation claims fail because the alleged retaliatory actions were not sufficiently adverse and because prison officials acted in furtherance of at least one legitimate governmental interest . . . .  Although Plaintiff complains that defendants transferred him to the landscaping job, even though his medical records showed that he suffered from sinus problems, he also states that "within an hour of being around the grass being cut, his nose began bleeding; however, plaintiff was able to get his job changed to a janitor in the housing unit." (Docket entry #8, p. 22.) Transfer to a landscaping job for one hour could hardly be classified as adverse action; transfer to the janitor job was not retaliatory, since it was Plaintiff himself who obtained this job change.  Finally, Plaintiff's numerous and repeated complaints to BOP officials, as well as his repeated invocation of the judicial process, show that he has not been deterred form exercising his First Amendment rights.  <u>See</u> <u>Antonelli v. Sheahan</u>, 81 F. 3d 1422, 1430 (7th Cir. 1996).

<u>Toolasprashad v. Williams</u>, Civil No. 07-5860 (RBK) opinion at pp. 8-12 (D.N.J. filed Apr. 28, 2009).

  18.  "The preclusive effect of a judgment is defined by claim preclusion and issue preclusion, which are collectively referred to as 'res judicata.'  Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or

not relitigation of the claim raises the same issues as the earlier suit.' New Hampshire v. Maine, 532 U.S. 742, 748, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim. Id., at 748-749." Taylor v. Sturgell 128 S.Ct. 2161, 2171 (2008); see also Allen v. McCurry, 449 U.S. 90, 94 (1980) ("Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"); Elkadrawy v. Vanguard Group, Inc., 584 F. 3d 169, 172 (3d Cir. 2009) ("In order to prevail on a defense of res judicata, a defendant must demonstrate that there has been: (1) a final judgment on the merits in a prior suit; (2) involving the same parties or their privies; and (3) a subsequent suit based on the same cause of action").

19.  Plaintiff's First Amendment retaliation claim regarding the job reassignment on May 2, 2008, is barred by res judicata because Plaintiff litigated this claim in the above described action.[3]  To the extent that Plaintiff seeks to assert a retaliation claim based on the job reassignment on April 26, 2002, this claim is similarly barred by res judicata since such claim was rejected by this Court and the United States Court of Appeals for the Third Circuit in Toolasprashad v. Wright, 2007 WL 2384231 (3d Cir. 2007).  Because amendment of the Complaint would be futile, this Court will not grant leave to amend.

---

[3] A district court may sua sponte dismiss a claim on res judicata grounds where "a court is on notice that it has previously decided the issue presented . . . .  This result is fully consistent with the policies underlying res judicata: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." Arizona v. California, 530 U.S. 392, 412 (2000) (citation and internal quotation marks omitted).

C. Plaintiff's Remaining Motions

20. Plaintiff has also filed the following motions: (a) motion to change his name on the caption of the Complaint to "Latchmie Toolasprashad aka Sand Nigger" because guards and prisoners refer to Plaintiff as "Sand Nigger;" (b) motion for a discovery schedule; (c) motion for the production of 31 documents; (c) motion to consolidate this matter with Toolasprashad v. Williams, Civil No. 07-5860 (RBK); and (d) motion to apply the holding of Brodheim v. Cry, 584 F. 3d 1262 (9th Cir. 2009).[4]

21. Because this Court is denying Plaintiff's motion for reconsideration of the dismissal of the Privacy Act Claim and this Court is dismissing the remaining claims with prejudice, this Court will deny these motions as moot.

22. An appropriate Order accompanies this Memorandum Opinion.

 s/Robert B. Kugler
 **ROBERT B. KUGLER, U.S.D.J.**

Dated:   December 17  , 2009

---

[4] Broadheim is a prisoner retaliation case in which the Ninth Circuit held that "the mere *threat* of harm can be an adverse action, regardless of whether it is carried out because the threat itself can have a chilling effect." Id. at 1270.  The Third Circuit has not held that the mere threat of harm satisfies the adverse action requirement and this Court is bound to follow holdings from the Third Circuit.  To the contrary, the Third Circuit has repeatedly required an inmate to show "an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights and [] a causal link between the exercise of his constitutional rights and the adverse action taken against him." Mitchell v. Horn, 318 F. 3d 523, 530 (3d Cir. 2003 (citation and internal quotation marks omitted).  In any event, because Plaintiff does not assert that defendants merely threatened to take adverse action, the Brodheim case is factually irrelevant.  Under these circumstances, the case is not relevant to Plaintiff's retaliation claim, even if this Court were to decide the claim on the merits.